1

2

3

4

5
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
6
AT SEATTLE

7
ESTATE OF FELIPE VARGAS,

8
Plaintiff,

9
v.                                              C15-555 TSZ

10
ST. PAUL FIRE & MARINE                          ORDER
INSURANCE COMPANY,
11
Defendant.

12

13          THIS MATTER comes before the Court on Defendant's Motion for Summary

14   Judgment, docket. no. 36, and Plaintiff's Cross Motion for Summary Judgment, docket

15   no. 46.  The Court enters the following order.

16   **Background**

17          Thomas Earl ("Earl"), an attorney who previously provided public defense

18   services in Grant County as an independent contractor, was sued in 2006 by a former

19   client, Felipe Vargas ("Vargas"), for alleged ineffective assistance of counsel.  Ex. 17 to

20   Lether Decl. (docket 37-17).  In response to the suit, Earl voluntarily petitioned for

21   bankruptcy protection in the Eastern District of Washington on June 13, 2006, under

22   Cause No. 06-01339-FLK13.  Ex. 18 to Lether Decl. (docket no. 37-18).  In January

23

ORDER - 1

2009, Vargas obtained a judgment against Earl.  Ex. 14 to Ahrend Decl. (docket no. 16-16).  Before the judgment was entered, Vargas settled with Grant County and released the county and its insurers, with the caveat that the "Release does not include defendant Thomas J. Earl."  Resp. to Summ. J. Mot. at 5 (docket no. 47).  Approximately six years later, after Vargas passed away, Earl entered into a stipulated settlement with the Estate of Vargas (the "Estate").  Ex. 15 to Ahrend Decl. (docket no. 16-17).  Pursuant to the settlement, Earl assigned to the Estate any rights he may have had regarding an insurance policy that St. Paul Fire & Marine Insurance Company ("St. Paul") had issued to the Washington Rural Counties Insurance Program ("WRCIP") and its member counties, including Grant County.

The current action is an insurance coverage dispute involving the insurance policy that provides WRCIP with public entity management liability protection for the period of September 1, 2004 to September 1, 2005, policy number GP06301649 (the "Policy").  Mot. for Summ. J. at 3 (docket no. 36).  Subject to various terms, conditions, and exclusions, the policy covers "amounts any protected person is legally required to pay as damages for covered loss."  Policy at 80, Ex. A to Karamessinis Decl. (docket no. 38-1).  The policy defines "protected person" to include WRCIP and its member counties, along with their "elected or appointed officials," "board members," "employees," and "volunteer workers."  *Id.* at 83-84.  The policy defines "employee" to exclude "independent contractors."  *Id.*  While the policy does not define "elected or appointed official," under the definition of "volunteer worker" it differentiates between "independent contractors" and "appointed officials" as follows:

*Volunteer worker* means any person who performs duties related to the conduct of your operations, other than:

- an employee;
- any of your elected or appointed officials or members of your boards; or
- any independent contractor.

*Id.* at 84.

The Estate contends that Earl was an "appointed official" of Grant County, while he worked there as a contracted public defender, and therefore should be covered by the WRCIP insurance policy for the conduct of his duties under the contract.  Resp. to Summ. J. Mot. at 9 (docket no. 47).  St. Paul argues that Earl was not an appointed official, and as an independent contractor for Grant County his conduct was not covered by the policy.  Summ. J. Mot. at 2, 4-5, 13-16 (docket no. 36).

**Discussion**

**A. Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (non-moving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e).

ORDER - 3

1

**B.  Status as Insured**

2

Resolution of defendant's motion for summary judgment turns on whether the St.

3

Paul insurance policy covered Earl.  Plaintiff argues that Earl was covered by the policy

4

because, although he was not an employee, he should be considered an "appointed

5

official."  Resp. to Summ. J. Mot. at 10 (docket no. 47).  *Jones v. St. Paul Fire & Marine*

6

*Ins. Co.*, Western District of Washington Cause No. 2:15-cv-00531-MJP (a similar

7

though unrelated case) is directly on point.  In that case, the court found that a contract

8

attorney hired by Grant County to provide public defense services for indigent juvenile

9

defendants was not an appointed official, and was therefore not covered under the St.

10

Paul policy.  *Jones v. St. Paul Fire & Marine Ins. Co.*, No. 15-531 MJP, 2015 WL

11

4508884, at *2 (W.D. Wash. July 24, 2015).

12

As in *Jones*, the insurance policy at issue excludes independent contractors from

13

coverage and differentiates between independent contractors and appointed officials.

14

Also, as in *Jones*, Earl's contract with Grant County required him to maintain private

15

malpractice insurance, to name the county as a co-insured, and to indemnify, defend, and

16

hold harmless Grant County and its "appointed officers" against negligence liability and

17

other costs.  Contract at 16, Ex. 4 to Ahrend Decl. (docket  no. 16-4).  Moreover, Earl's

18

contract with the county also specifies that "[n]o officer, employee, or agent of the

19

COUNTY shall have any personal and/or financial interest, direct or indirect, in this

20

Contract."  *Id.* at 8.

21

22

23

ORDER - 4

The Court agrees with the holding in *Jones* and finds that the St. Paul insurance policy does not cover Earl.  Each of Plaintiff's claims depend on coverage under the Policy.

## C. Plaintiff's Claims

### 1. Breach of Contract

A plaintiff in a contract action must prove a valid contract between the parties, breach, and resulting damage. *Lehrer v. State, Dept. of Social and Health Services*, 101 Wn.App. 509, 516, 5 P.3d 722 (2000)(citing *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn.App. 707, 712, 899 P.2d 6 (1995)). "Under Washington law, for a third party to sue for breach of contract, 'both contracting parties must intend that a third party beneficiary contract be created.'" *Jones v. St. Paul Fire & Marine Ins. Co.*, 2015 WL 4508884, at *3 (W.D. Wash. July 24, 2015)(citing *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013)).

Plaintiff argues that Earl was entitled to coverage under the Policy because he was an "appointed official" of Grant County. Mot. to Remand at 10 (docket no. 15). Yet, as in *Jones*, "there is good reason to conclude that Grant County … specifically did not insure" Earl, as his contract with Grant County also "required him to maintain private malpractice insurance, to name the county as a well as co-insured, and to indemnify, defend, and hold harmless Grant County (as well as Grant County's 'appointed officers') against negligence liability and other costs." *Jones v. St. Paul Fire & Marine Ins. Co.*, 2015 WL 4508884, at *2 (W.D. Wash. July 24, 2015). Along with Earl's classification as a non-employee contractor, these requirements further demonstrate that Grant County

ORDER - 5

1 did not intend to create a third party beneficiary relationship with Earl in connection with

2 the county's insurance policy.  Therefore, the Court finds that Earl was not a third-party

3 beneficiary.

### 2.  Insurance Bad Faith

5       To prevail on a bad faith claim, a policyholder must show that their insurer's

6 breach of the insurance contract was "unreasonable, frivolous, or unfounded." *American*

7 *States Ins. Co. v. Symes of Silverdale, Inc.*, 150 Wn.2d 462, 469-70, 78 P.3d 1266 (2003).

8 An "insurer is entitled to summary judgment if reasonable minds could not differ that its

9 denial of coverage was based upon reasonable grounds." *Smith v. Safeco Ins. Co.*, 150

10 Wn.2d 478, 486, 78 P.3d 1274 (2003).  Earl did not tender a claim and no one tendered a

11 claim on his behalf prior to commencing the current action.  Karamessinis Decl. at ¶ 4

12 (docket no. 38).  Even if a claim had been tendered earlier, a denial would have been

13 reasonable and appropriate because Earl was not insured under the Policy.

### 3.  Consumer Protection Act

15       To establish a Consumer Protection Act ("CPA") claim, a plaintiff must show: (1)

16 an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that

17 impacts the public interest; (4) injury to his business or property; and (5) that the injury

18 was proximately caused by the unfair or deceptive act.  *Hangman Ridge Training Stables,*

19 *Inc. v. Safeco Title Ins. Co.*, 105 Wn. 2d 778, 784-785, 719 P.2d 531 (1986).  The

20 insurance commissioner has defined several unfair methods of competition or unfair or

21 deceptive acts or practices in the business of insurance, which are codified in WAC 284–

22 30–330. "Committing any one of these acts or practices constitutes a per se unfair trade

23

1  practice." *Dombrosky v. Farmers Ins. Co. of Washington*, 84 Wn. App. 245, 260, 928

2  P.2d 1127, 1136 (1996), as amended (Feb. 7, 1997).  "[A] reasonable basis for denial of

3  an insured's claim constitutes a complete defense to any claim that the insurer acted in

4  bad faith or in violation of the Consumer Protection Act."  *Id.*

5       Earl was not insured under the Policy and was not entitled to coverage.  He did not

6  tender a claim prior to the filing of the current action, and the Estate has not alleged any

7  technical violations of any WAC provision.  As a result, the Estate's CPA claim is

8  without merit.

9       **4.  Negligence**

10      To survive summary judgment on a negligence claim, an insured must show: "(1)

11  the existence of a duty to the person alleging negligence; (2) breach of that duty; (3)

12  resulting injury; and (4) proximate cause between the breach and the injury."  *American*

13  *Commerce Ins. Co. v. Ensley*, 153 Wn. App. 31, 42, 220 P.3d 215 (2009), *review denied*,

14  169 Wn.2d 1010 (2010).  While an insurer has a duty of good faith to its policyholder,

15  "[w]hen no duty of care exists, a defendant cannot be subject to liability for negligent

16  conduct."  *Webstad v. Stortini*, 83 Wn. App. 857, 865, 924 P.2d 940 (1996).

17      St. Paul did not owe any duty of care to Earl because Earl was not insured and was

18  not entitled to coverage under the Policy.  There is no basis for the Estate's negligence

19  claim.

20      **5.  Breach of Fiduciary Duty**

21      To establish a claim for breach of fiduciary duty, the plaintiff must prove: (1) the

22  existence of a duty owed by fiduciary to the plaintiff, (2) breach of that duty, (3) resulting

23

1  injury, and (4) the claimed breach proximately caused the injury.  *Miller v. U.S. Bank of*

2  *Wash.*, 72 Wn. App. 416, 426, 865 P.2d 536 (1994).  "A fiduciary relationship arises in

3  Washington when 'one party occupies such a relation to the other party as to *justify* the

4  latter in expecting that his interests will be cared for.'"  *Jones v. St. Paul Fire & Marine*

5  *Ins. Co.*, 2015 WL 4508884, at *3 (W.D. Wash. July 24, 2015)(citing  *Liebergesell v.*

6  *Evans*, 93 Wn.2d 881, 889-90 (1980)(citation omitted)).

7         Earl's contract with Grant County required him to maintain his own insurance and

8  to indemnify the county.  Contract at 16, Ex. 4 to Ahrend Decl. (docket  no. 16-4).

9  Because the contract gave Earl duties toward Grant County and not the other way around,

10  Earl could not justifiably expect the county's insurance carrier was caring for his

11  interests.

12    **D. Plaintiff's Cross-Motion**

13    Plaintiff moves for partial summary judgment that:

14         The underlying judgment in *Vargas v. Earl*, U.S. District Court, Eastern District of
     Washington, No. CV-06-146-JLQ, was against Thomas Earl in his official
15     capacity, and may be satisfied from the assets of Grant County, by garnishing the
     proceeds of the insurance policy issued by St. Paul Fire & Marine Insurance Co.
16
17  Cross-Mot. for Partial Summ. J. at 1 (docket no. 46).  Plaintiff argues that the Estate is

18  entitled to garnish St. Paul to collect on the judgment against Earl because its policy

19  covers Grant County and the judgment against Earl was based on his official capacity as

20  administrator of public defense in the county.  Resp. to Summ. J. Mot. at 1-2 (docket no.

21  47).  Plaintiff contends that Vargas was not prevented from pursuing a direct claim

22  against Grant County by means of an official-capacity suit against Earl because the

23

ORDER - 8

language "It is understood that this Release does not include defendant Thomas J. Earl" is included in the settlement agreement between Vargas and the county.  Resp. to Summ. J. Mot. at 5-6 (docket no. 47); Release and Hold Harmless Agr. at 1, Ex. 13 to Ahrend Decl. (docket no. 16-15).[1]  Plaintiff argues that, as such a suit was not barred by the settlement agreement, the cause of action in Vargas's suit against Earl was an "official capacity" suit.  Defendant contends that Vargas's suit against Earl was only brought against him in his personal capacity.  Def.'s Reply at 4 (docket no. 49).

Personal-capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)(citations omitted).  Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.*  In a §1983 action, it is enough to show that an "official, acting under color of state law," caused the deprivation of a federal right to establish personal responsibility. *Id.* at 166.  However, a public entity's "policy or custom" must have played a part in the violation of federal law for a plaintiff to prevail in an official-capacity suit. *Id.*  A victory in a personal-capacity suit is only a victory against the individual defendant, not against the entity that employs him. *Id.* at 167.

---

[1] Plaintiff distinguishes the settlement agreement between Vargas and Grant County from the settlement agreement between Jones and Grant County which arose from the action in *Jones* because that agreement included the language "personal capacity and not in his official capacity, the intent being to release all claims against GRANT COUNTY." Ex 41 to Ahrend Decl. at 1 (docket no. 48-12).

1    Plaintiff relies upon *Kentucky* as authority to substantiate its assertion that the

2    judgment in Vargas's case against Earl "may be satisfied from the assets of the county,

3    including its insurance policies." Resp. to Summ. J. Mot. at 5 (docket no. 47). Yet,

4    while plaintiff offers indicia of proof that Vargas's suit against Earl was a personal-

5    capacity action, it does little to demonstrate that the complaint, jury instructions, or

6    verdict point to Earl's official-capacity liability. The Judgment against Earl does not

7    state that it was entered for acts done in Earl's alleged "official capacity." Ex. 14 to

8    Ahrend Decl. at 1 (docket no. 48-7). Also, while the language of Vargas's settlement

9    agreement with Grant County did not specifically state that it precluded any suit against

10   Earl in his "official capacity," the agreement did "fully [discharge] Grant County" from

11   "any and all manner of claims, demands, liabilities, obligations, damages, causes of

12   action or suits, whether known or unknown, which Vargas may have against Grant

13   County." Release and Hold Harmless Agr. at 1, Ex. 13 to Ahrend Decl. (docket no. 16-

14   15). This agreement thereby released any and all potential "official capacity" liability

15   given that official-capacity suits are simply "another way of pleading an action against [a

16   government] entity." *Kentucky*, 473 U.S. at 165.

17   Washington law provides that a liability insurer is only "subject to garnishment

18   upon the entry of judgment against its insured debtor." *Weyerhaeuser Co. v. Calloway*

19   *Ross, Inc.*, 133 Wn. Ap.. 621, 624, 137 P.3d 879 (2006). Vargas did not receive a

20   judgment against Grant County, and before the judgment against Earl was entered,

21   Vargas settled with the county, releasing it and its insurers from any liability, and

22   therefore the Estate has no right to garnish St. Paul or the Policy.

23

ORDER - 10

**Conclusion**

Plaintiff's request for a Rule 56(d) continuance is DENIED.  Additional discovery is unnecessary and discovery will not change the fact that there is no coverage.  For the foregoing reasons, defendant's motion for summary judgment, docket no. 36, is GRANTED and plaintiff's cross motion for summary judgment, docket no. 46, is DENIED.  Plaintiff's complaint is DISMISSED with prejudice.  In light of the Court's ruling, defendant's counterclaim for declaratory judgment is DISMISSED as moot.  The Clerk is DIRECTED to enter judgment consistent with this Order, to send a copy of this Order to all counsel of record, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 3rd day of February, 2016.

Thomas S. Zilly
United States District Judge

ORDER - 11